## Times-Argus Association, Inc. v. Department of Employment and Training

[503 A.2d 129]

No. 83-595

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed October 11, 1985

*Clarke A. Gravel* and *Dennis R. Pearson* of *Gravel, Shea & Wright, Ltd.*, Burlington, for Plaintiff-Appellant.

*Steven J. Kantor* and *Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Peck, J.** This is an appeal by Times-Argus Association, Inc. (Times-Argus or appellant), the publisher of a daily newspaper having general circulation in central Vermont, from a decision of Vermont Employment Security Board which held the Times-Ar-

gus liable for contributions to the State Unemployment Compensation Fund (fund). 21 V.S.A. § 1331. The Times-Argus claims the Board erred in concluding (1) that payments made to rural route drivers were "wages," and (2) that the services performed by the drivers constituted "employment" within the meaning of the Unemployment Compensation Act. We disagree with the appellant's contentions and affirm the Board's decision.

In its effort to circulate its newspaper more expeditiously, the Times-Argus contracts with individuals to deliver papers to its rural customers. These individuals provide their own vehicles which they operate and maintain at their own expense. In exchange for a weekly sum of money set by the Times-Argus, the drivers deliver the papers along a designated route designed to take two to three hours per day to complete. The amount of remuneration for each driver depends upon the number of miles traveled, the number of subscribers and the time it takes to complete a specific route.

Based on a claim for unemployment compensation benefits made by a former driver, the Unemployment Compensation Division of the Department of Employment and Training issued an assessment of contributions against the Times-Argus. 21 V.S.A. § 1330. Thereafter, the Times-Argus petitioned for a hearing before an appeals referee, 21 V.S.A. § 1331; the referee upheld the Department's assessment. The Times-Argus then appealed to the Board, which sustained the referee's decision. The appeal to this Court followed.

## I.

The Times-Argus first claims that the Department failed to establish that the payment made to the drivers constituted "wages" within the meaning of 21 V.S.A. § 1301(12).

The Times-Argus argues the Department failed to introduce any credible evidence from which the Board could conclude that payments made to the drivers constituted wages. Appellant concedes in its brief that "drivers receive various lump sums for driving particular routes." Nevertheless, it contends (1) that the services rendered by the drivers are insufficiently related to the compensation, and (2) that the Department failed to prove that *all* payments made to all drivers constitute "wages."

■   Under 21 V.S.A. § 1321(a) employers subject to the unemployment compensation law are liable for contributions to the fund "with respect to *wages* paid for employment." *Id.* (Emphasis added.) " 'Wages' means all remuneration paid for services rendered by an individual, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash." 21 V.S.A. § 1301(12). Where a statute's meaning is plain on its face, we will apply it in accordance with its express terms. *Montgomery* v. *Brinver Corp.,* 142 Vt. 461, 457 A.2d 644 (1983). Further, the remedial nature of the act demands a liberal reading of the statute. *Id.* Given these concerns and appellant's concession that the drivers receive sums for driving the routes, its claim that the drivers do not receive wages is without merit. Wages means *all* remuneration for services rendered. As appellant admits, the drivers receive sums (remuneration) for driving their routes (services). The Board did not err when it found that drivers received "wages."

Appellant claims there is insufficient evidence that *all* drivers, whose compensation served as the basis for the disputed assessment, received "wages." There was sufficient evidence on the record that all the drivers received *payments* based on similar criteria of miles traveled, number of subscribers, and time requirements. Given our holding above, that these payments were wages, it follows that all drivers received "wages."

## II.

Appellant next contends that, even if the drivers received "wages," it should be exempt from any assessment since the services performed were not "employment" under 21 V.S.A. § 1301(6)(B), which provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it can be shown . . . that:
>
> (i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
> (ii) Such service is either outside the usual course of the business for which such service is performed, or that such

service is performed outside of all the places of business of the enterprise for which such service is performed; and
(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

In addressing § 1301(6)(B), this Court stated in a 1981 opinion:

For an employer to satisfy the provision, all three conditions of this test (customarily called the "ABC" test) must be met, and an inability to satisfy any one will result in the conclusion that the relationship constitutes employment for purposes of the statute. *Bluto* v. *Department of Employment Security,* 135 Vt. 205, 208, 373 A.2d 518 (1977); *Vermont Securities, Inc., supra,* 118 Vt. at 200, 104 A.2d at 917.

*Vermont Institute of Community Involvement, Inc.* v. *Department of Employment Security,* 140 Vt. 94, 98, 436 A.2d 765, 767 (1981).

■ Clause (ii) of § 1301(6)(B) specifies that services shall be deemed employment unless and until it is shown by the employer either that such services were performed outside the employer's usual course of business, or that they were performed outside of all the places of business of the enterprise for which such service was performed. The appellant's failure to satisfy this burden, also known as Part "B" of the "ABC" employment test, justified a finding that the relationship between the Times-Argus and its drivers constituted employment. Appellant claims that it satisfied the first part of the disjunctive "B" test: that the delivery services performed by the drivers were performed outside of its usual course of business. We disagree.

We have not been referred to any evidence on the record to support appellant's assertion that the delivery or distribution of its newspapers is outside the usual course of its business. Because the burden of establishing this fact was on the appellant, the evidentiary defect here will inure to its detriment. *Bluto* v. *Department of Employment Security,* 135 Vt. 205, 209, 373 A.2d 518, 520-21 (1977). Even if some evidence were presented on this point, "[t]he weight to be given the testimony and the inferences to be drawn therefrom are matters properly for the Board, not for this Court." *Frost* v. *Department of Employment Security,* 135 Vt. 39, 40, 370 A.2d 203, 204 (1977). The Board concluded that

"there is no question but that its business is the publication, circulation and *distribution* of a newspaper." (Emphasis added.) This conclusion is not contrary to the evidence.

*Affirmed.*